**SIGNED THIS: December 30, 2005**

_____
**THOMAS L. PERKINS
UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: | ) |
|  | ) |
| THOMAS J. TOLSON, | )  No. 04-85158 |
| Debtor. | ) |

**O P I N I O N**

Whether homestead real estate held in tenancy by the entirety by a married couple is exempt and insulated from administration by the trustee in bankruptcy, a difficult question that turns on state law, must be addressed in this Opinion in the context of the issue of avoidance of a judicial lien on entireties property where the lienholder is a creditor of the bankrupt spouse only.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Debtor, Thomas J. Tolson (DEBTOR), filed for Chapter 7 relief on November 17, 2004. His wife, Lynn Tolson, did not file. They reside at 28060 Kentuckiana Road, Macinaw, Illinois, and have lived there as husband and wife for almost thirty years. The DEBTOR owned the property before the marriage and continued to hold sole title to it until June 14, 2000, when he conveyed title to he and his wife as tenants by the entirety. The property is encumbered by a mortgage to Heights Bank (HEIGHTS BANK) with a petition date balance of $52,637.94. Based upon a scheduled value of $115,000, the equity over and above the mortgage is approximately $62,000.

After retiring from Caterpillar in 1999, the DEBTOR ventured into the automobile business with his brother-in-law, accepting employment as service manager at Abraham Motor Plaza. The business was financed by a loan from HEIGHTS BANK in excess of $500,000 made in April, 2000, cosigned by the DEBTOR, individually, but not by his wife. The business subsequently failed and HEIGHTS BANK took a judgment, entered in a foreclosure action, against the DEBTOR on April 19, 2004, in the amount of $546,821.13. HEIGHTS BANK recorded a memorandum of the judgment in the Office of Recorder of Deeds for Tazewell County, the county in which the real estate owned by the DEBTOR and his wife is situated. After the liquidation of collateral, the judgment balance was reduced to $143,613.40 as of the DEBTOR'S bankruptcy filing.

On his schedule of property claimed as exempt (Schedule C) filed with the petition, the DEBTOR claimed a $7,500 exemption in the real estate under the Illinois Homestead Exemption Law, 735 ILCS 5/12-901. Schedule C was subsequently amended twice by the DEBTOR to assert additional exemptions in the real estate under 750 ILCS 65/22 and 735 ILCS 5/12-112, each for "100%."[1] Neither the Chapter 7 Trustee nor any creditor objected to the initial claim of exemption under 735 ILCS 5/12-901 or the second amended claim of exemption under 735 ILCS 5/12-112. HEIGHTS BANK filed a timely objection to the first amended claim of exemption asserted under 750 ILCS 65/22. On January 3, 2005, the Trustee filed an Abandonment of certain estate assets including the homestead real estate.

The DEBTOR moved to avoid the judicial lien of HEIGHTS BANK pursuant to Section 522(f) of the Bankruptcy Code, contending that entireties property is 100% exempt, and that the judicial lien impairs the entireties exemption and is thus avoidable. In its response and in its objection to the claim of exemption, HEIGHTS BANK takes the position that the Illinois tenancy by the entireties provision is not an exemption statute and, alternatively, that the tenancy is

---

[1] Although not specified in the Amendments as such, the Court interprets them as stating additional, alternative exemption grounds.

2

ineffective because the DEBTOR transferred the real estate into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer. After trial, the Court took the matter under advisement and solicited briefs, which have been filed.

## ANALYSIS

### The entireties exemption is a federal exemption.

Although seemingly a difference without a distinction, it should be noted at the outset that the exemption for property held in tenancy by the entirety is a federal exemption. Section 522(b)(2)(B) of the Bankruptcy Code provides as follows:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (1), where such election is permitted under the law of the jurisdiction where the case is filed. Such property is–
> \* \* \*
> (2) . . .
>> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C. § 522(b)(2)(B). Separate from the Section 522(d) exemptions, this special provision is available to debtors who file in opt-out states like Illinois. Even though it is a federal exemption, it is clearly dependant on state law as the entireties interest is exemptible only to the extent such interest is exempt from process under applicable nonbankruptcy law. Thus, the contention that the Illinois tenancy by the entireties provision is not an exemption statute must be rejected. By casting it as a federal exemption, Congress has eliminated any inquiry into whether the state legislature

3

intended its tenancy by the entirety statute to be the kind of exemption provision available to a debtor in bankruptcy by operation of 11 U.S.C. § 522(b)(2).[2] The relevant issue is to what extent the entireties tenant's interest is "exempt from process under applicable nonbankruptcy law."

**The entireties conveyance was not solely to avoid debts.**

The provision describing the protection afforded by an Illinois tenancy by the entirety, available only in homestead real estate, is found in Section 12-112 of the Illinois Code of Civil Procedure, which provides in material part as follows:

> What liable to enforcement. All the lands, tenements, real estate, goods and chattels (except such as is by law declared to be exempt) of every person against whom any judgment has been or shall be hereafter entered in any court, for any debt, damages, costs, or other sum of money, shall be liable to be sold upon such judgment. Any real property, or any beneficial interest in a land trust, held in tenancy by the entirety shall not be liable to be sold upon judgment entered on or after October 1, 1990 against only one of the tenants, except if the property was transferred into tenancy by the entirety with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the transferor's ability to pay those debts as they become due. However, any income from such property shall be subject to garnishment as provided in Part 7 of this Article XII, whether judgment has been entered against one or both of the tenants.[3]

735 ILCS 5/12-112.

Pointing out that the DEBTOR conveyed his homestead into a tenancy by the entirety two months after he cosigned a half million dollar note, HEIGHTS BANK contends that the conveyance was made with the sole intent to avoid the payment of debts existing at the time of the transfer beyond the DEBTOR'S ability to pay. The DEBTOR testified that the conveyance was unrelated to the business loan with the proximity in time being coincidental. In 1995, when the mortgage was refinanced, his wife became aware that she was not a joint owner of the property. Expressing

---

[2] A state would be precluded, for example, from providing that its tenancy by the entirety law is operational only outside of bankruptcy.

[3] This provision, effective October 1, 1990, reinstituted in Illinois the form of ownership known as tenancy by the entirety, ending a 129 year hiatus. The common law rule permitting a husband and wife to own homestead real estate as tenants by the entirety was abrogated with the adoption of the Married Woman's Act of 1861. *Douds v. Fresen,* 392 Ill. 477, 64 N.E.2d 729 (1946). The long gap has resulted in a dearth of Illinois court decisions on the subject of entireties.

4

concern about avoiding probate if the DEBTOR predeceased her, she asked him to put her on the title as a joint owner. The DEBTOR testified that he finally got around to it in 2000 at the same time that he consulted a lawyer about estate planning. The lawyer prepared the deed along with a will. The DEBTOR testified that the lawyer recommended a tenancy by the entirety and he accepted the advice.

Having carefully evaluated the evidence presented at trial, including the credibility of the DEBTOR and his wife, the Court concludes that avoiding existing debts was not the DEBTOR'S sole intent in making the conveyance into a tenancy by the entirety. Therefore, the tenancy's protection from forced sale of the property by the DEBTOR'S individual judgment creditors is not defeated because of the circumstances of the conveyance.

**Avoidance of the judgment lien.**

Liens on exempt property may be avoided under Section 522(f)(1)(A), which provides that a debtor may avoid the fixing of a judicial lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of Section 522. 11 U.S.C. § 522(f)(1)(A). In order for a lien to be avoidable each of four requirements must be satisfied:

1. The lien must be a judicial lien;
2. The lien must have fixed on an interest of the debtor in property;
3. The debtor claims and is entitled to exempt that property interest under Section 522(b); and
4. The lien impairs the exemption.

A judicial lien is one "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). In Illinois, a judgment creates a lien on the real estate of the judgment debtor "from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located." 735 ILCS 5/12-101.

5

**A judgment lien attaches to an entireties tenant's interest.**

The parties do not dispute the general proposition that a lien on real estate arising from a duly recorded memorandum of judgment is a "judicial lien." There is also no question that if the lien fixed at all, it fixed when the memorandum of judgment was recorded. Whether a recorded memorandum of a judgment against only one tenant by the entirety creates a lien on that tenant's interest in the entireties property, however, has not been decided by any Illinois state court and has created a split among federal courts construing Illinois law. Some courts have held that a lien is obtained against the judgment debtor's interest in the entireties property. *In re Mukhi,* 246 B.R. 859, 862 (Bankr.N.D.Ill. 2000)(Schmetterer, J.); *In re Allard,* 196 B.R. 402, 407-10 (Bankr.N.D.Ill. 1996)(Squires, J.), *aff'd sub nom. Great Southern Co. v. Allard,* 202 B.R. 938 (N.D.Ill. 1996). Others have held that no lien is obtained. *S.E.C. v. Householder,* 2005 WL 281222 (N.D.Ill. 2005).

The difference between these opposing views concerns whether the lien attaches to the judgment debtor's interest in the real estate but cannot be presently enforced, or whether the judgment creditor's inability to enforce the lien defeats its validity. In *Mukhi* and *Allard*, the courts considered that a judgment against one tenant gives rise to a lien against that individual tenant's contingent future interest in the property. The court in *Householder* extended the ruling of *Lehman v. Cottrell*, 298 Ill.App. 434, 19 N.E.2d 111 (Ill.App. 2 Dist. 1939), that a judgment is not a lien upon property subject to the homestead exemption, to property held in tenancy by the entirety. Resolving the conflict between the statute giving the judgment creditor a lien against the real property owned by the judgment debtor and the homestead statute exempting a portion of the debtor's lands from sale for the satisfaction of judgments, in favor of the latter, the *Lehman* court ruled that the homestead provision partially displaced the judgment lien statute, to the extent of the

6

exemption amount which at that time was $1,000.00.[4] Because the lien of a judgment was regarded as arising from the right to sell the property, the court in *Lehman* concluded that where the right of sale could not be asserted the very existence of the lien must be denied. Put another way, because there is nothing that can be seized and sold under an execution upon the judgment, there can be no lien.

However, the alternative view that a lien arises is supported by almost century-old cases, rendered at a time when the nature of the estate by entireties had long been settled. As explained by the court in *Beihl v. Martin*, 236 Pa. 519, 84 A. 953 (1912), the inability of a judgment creditor to sell any interest on execution for the debts of either the husband or the wife results from the nature of the estate of tenancy by the entirety. Describing the attributes of the estate by entireties, the court stated:

> Fundamentally the estate rests on the legal unity of husband and wife. It is therefore a unit, not made up of divisible parts subsisting in different natural persons, but is an indivisible whole, vested in two persons actually distinct, yet to legal intendment one and the same. Each is seised of the whole estate from its inception, and upon the death of one, while the right of survivorship remains to the other, that other takes no new title or estate. . . . The estate of joint tenants is a unit, made up of divisible parts; that of husband and wife is also a unit, but it is made up of indivisible parts. In the first case there are several holders of different moieties or portions, and upon the death of either the survivor takes a new estate. He acquires by survivorship the moiety of his deceased cotenant. In the last case although there are two natural persons, they are but one person in law, and upon the death of either the survivor takes no new estate. It is a mere change in the properties of the legal person holding, and not an alteration in the estate holden. . . .
>
> It is this striking peculiarity of the estate–the entirety alike in husband and wife–that operates to exempt it from execution and sale at the suit of a creditor of either separately.[5]

236 Pa. at 522-23. The court concluded that a judgment lien attaches not to the entirety of the estate

---

[4] The court found as a matter of fact that the property in question was worth only $800.00 so that there was no nonexempt value to which the judgment liens could have attached.

[5] Early Illinois law regarding the nature of tenancy by the entirety is materially similar to Pennsylvania's. *Almond v. Bonnell*, 76 Ill. 536 (1875). That law of Pennsylvania continues unchanged. *See, In re Johnston*, 333 B.R.724 (Bankr.W.D.Pa. 2005).

7

but to the right of survivorship, stating:

> Contingent though this ultimate divestitute be, the expectancy is never-theless a vested interest, and as such may be the subject of lien. All possible titles, vested or contingent, in land, under our law, may be taken in execution and sold, provided it be a real interest, whether legal or equitable.

236 Pa. at 527. Though a lien against either the interest of the husband or the wife could not be enforced while the tenancy continued, upon the death of either, a lien against the surviving spouse could then be enforced against the property then owned solely by the survivor.

In this Court's view, the analogy drawn by the court in *Householder* between the homestead estate and property held in tenancy by the entireties is not persuasive. Unlike tenancy by the entirety property, a judgment lien can never attach to a debtor's homestead interest in property which is defined as the value of the property up to the maximum amount of the judgment debtor's homestead exemption under 735 ILCS 5/12-901. A judgment lien cannot attach to that interest while the property is occupied and used as a homestead and it cannot attach to that interest when the property is sold. As recognized by the *Lehman* court, a judgment only becomes a lien on the homestead estate upon abandonment or waiver of the homestead.

By contrast, the contingent right of survivorship of each entireties tenant is a present property right to which a judgment lien extends. The Supreme Court's decision in *U.S. v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002), addressing the similar issue of whether a tenant by the entirety possessed either "property" or "rights to property" to which a federal tax lien attached pursuant to Section 6311 of the Internal Revenue Code, supports this result. Employing the academic metaphor of property as a "bundle of sticks" with each stick within the bundle representing a particular right held by the owner, and turning to state law to determine the collection of rights held by the individual spouse, the Court held that possession of the right to use the property, the right to receive income generated from the property and the right of survivorship qualified as "property" for purposes of the statute. In so ruling, the Court held that the absence of the single

8

stick marked "right of unilateral alienation" was not determinative. Moreover, as the court pointed out in *Beihl v. Martin, supra,* upon the death of either spouse, the actual estate remains the same, but the holder of the estate changes from the unit of husband and wife to the individuality of the survivor. Thus, although the survivor becomes the sole owner upon the death of the other spouse, the survivor has been in possession of the whole estate from the inception. Though the judgment creditor's ability to enforce a lien is suspended, contingent, and subject to divestment, the lien becomes absolute and attaches to the whole estate of the judgment debtor upon the death of the other spouse.[6]

The statutory language supports the conclusion that a lien does arise. Section 12-101 provides in material part, as to non-Torrens Act real estate:

> [A] judgment is a lien on the real estate of the person against whom it is entered in any county in this State, including the county in which it is entered, only from the time a transcript, certified copy or memorandum of the judgment is filed in the office of the recorder in the county in which the real estate is located. The lien may be foreclosed by an action brought in the name of the judgment creditor or its assignee of record under Article XV in the same manner as a mortgage of real property, except that the redemption period shall be 6 months from the date of sale and the real estate homestead exemption under Section 12-901 shall apply.

735 ILCS 5/12-101. This provision, containing no exception for entireties property, mandates, first, that a judgment, once recorded, *is a lien* on the real estate of the person against whom it is entered. It then addresses enforcement of the lien through foreclosure providing only that the basic homestead exemption under Section 12-901 shall apply.

In that same Article XII of the Code of Civil Procedure, in Section 12-112 (quoted above), which identifies the property of a judgment debtor that is subject to enforcement by sale, is found the provision that describes the protection afforded entireties property. The fact that this provision

---

[6]Courts have long recognized that under federal law the validity of a tax lien does not turn upon whether the property is exempt from levy. *Matter of Voelker*, 42 F.3d 1050 (7th Cir. 1994).

9

is found in the section addressing enforcement of judgments is an indication that its effect is intended to be limited to the enforceability of the lien and not its creation or existence which is provided for in Section 12-101. Most importantly, the language of the provision itself, that property held in tenancy by the entirety "shall not be liable to be sold upon judgment . . . against only one of the tenants," supports the same conclusion. If the Legislature had intended the provision to offer the broader protection against the creation of a lien, rather than merely its enforcement, it would have said so, most likely in Section 12-101 where the creation of judgment liens is addressed.

Moreover, because the primary purpose of the tenancy by the entirety law is to protect the ability of a married couple to retain occupancy of the marital homestead against the creditors of only one spouse while the marriage is intact, there is no apparent reason to upset the traditional lien priority scheme of first in time, first in right.[7] That purpose is fully served by restricting the enforceability of single-tenant judgments so long as the entireties tenancy remains in place while still permitting the lien to attach to the judgment debtor's interest. Once the tenancy is broken, however, and the property becomes fair game for all creditors, judgment lienors should be permitted to queue up in the order in which they recorded their liens regardless of whether they hold a judgment against both or only one tenant. There is no reason to deprive the holder of a judgment against only one tenant of the priority obtained by winning the race to the recorder's office notwithstanding that enforceability of the judgment was temporarily stayed.[8]

In a case in federal court in which state law provides the rule of decision, and where the state's highest court has not yet spoken, the federal court must predict how that court will decide the issue, and decide it the same way. *AAR Aircraft & Engine Group, Inc. v. Edwards,* 272 F.3d 468

---

[7] A lien that is first in time has priority over subsequently obtained liens. *Federal Nat. Mortg. Ass'n v. Kuipers,* 314 Ill.App.3d 631, 732 N.E.2d 723 (Ill.App. 2 Dist. 2000).

[8] Construing the lien as attaching to the judgment debtor's contingent future interest, though presently unenforceable, in this Court's view, does not diminish the special protection afforded the marital unity by the entireties estate.

(7th Cir. 2001); *MindGames, Inc. v. Western Pub. Co., Inc.,* 218 F.3d 652 (7th Cir. 2000). This Court is of the view that if and when the Illinois Supreme Court has occasion to address the issue, it will hold that a lien is created on a judgment debtor's interest in real estate held in tenancy by the entirety upon the recording of a memorandum of judgment in the office of recorder of deeds in which the real estate is located by the holder of a judgment against only one of the cotenants.[9] Accordingly, this Court holds that HEIGHTS BANK, upon recording its memorandum of judgment, obtained and holds a lien on the DEBTOR'S interest in the subject real estate.[10]

**The DEBTOR is entitled by law to exempt his entireties interest as against his individual creditors.**

The DEBTOR has claimed an exemption under three alternative statutory provisions. HEIGHTS BANK does not dispute that he is entitled, at a minimum, to the $7,500 exemption afforded by 735 ILCS 5/12-901. He also asserts an exemption right under 750 ILCS 65/22, which provides that nothing in the Illinois Rights of Married Persons Act, 750 ILCS 65/0.01 *et. seq.,* abolishes or prevents the creation of a tenancy by the entirety. That provision, however, does not provide for the creation of such a tenancy and is not to be construed as an exemption provision.

Alternatively and correctly, the DEBTOR relies on 735 ILCS 5/12-112 as the source of the tenancy by the entirety exemption, asserting that his interest in the homestead property, valued at

---

[9] The 1994 amendment to Section 522(f), implementing a new federal definition of impairment, overruled prior judicial decisions which had compromised the debtor's post-petition fresh start. *In re Kolich*, 328 F.3d 406 (8th Cir. 2003); *In re Holland*, 151 F.3d 547 (6th Cir. 1998). As the legislative history makes clear, a judicial lien on a property can impair an exemption even if the lien cannot be enforced through an execution sale. H.R. Rep. 103-835, *reprinted in* 1994 U.S.C.C.A.N. 3340, 3363. Courts have held, however, that where the lien does not attach to the debtor's property, lien avoidance is not necessary. *See, In re Cisneros*, 257 B.R. 332 (Bankr.D.N.M. 2000). Notwithstanding this Court's conclusion that a lien does in fact arise, it is precisely this federal policy coupled with the uncertainty under Illinois law, which persuades the Court to grant the DEBTOR'S motion here.

[10] Effectively, the judgment lien is unenforceable and contingent as long as the tenancy by the entirety exists. The tenancy is broken and ownership devolves into some form other than by the entirety upon divorce, conveyance out of entireties, establishment of a new homestead, or death of either spouse. 765 ILCS 1005/1c. Upon the occurrence of any such event, except death of the judgment debtor, the lien becomes enforceable against the real estate. Until that time, the lien is contingent since the judgment debtor may predecease the non-debtor spouse, in which event title vests in the surviving spouse free and clear of the judgment lien.

$115,000, is "100%" exempt. With no objection to this second amended claim of exemption having been filed, it must be allowed as to unsecured creditors even if the DEBTOR is not entitled to it as a matter of substantive law. 11 U.S.C. § 522(l); *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). That rule does not preclude HEIGHTS BANK'S defense, however. A failure to object to a claimed exemption, thereby allowed by default, does not prevent a creditor from defending a lien avoidance motion by arguing that the debtor lacks a substantive entitlement to the exemption under Section 522(b), since for a lien to be avoidable under Section 522(f)(1)(A), the claimed exemption must be one to which the debtor is *entitled* under Section 522(b). *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991); *In re Schoonover,* 331 F.3d 575 (7th Cir. 2003). In addition, *Schoonover* also holds that a lienholder, unlike general unsecured creditors, is not bound by the 30-day deadline to object to claimed exemptions. HEIGHTS BANK, as a lienholder, may properly raise the lack of a substantive entitlement to the exemption by way of defense to the lien avoidance motion.[11]

Thus, the issue becomes whether the debtor has a substantive entitlement to the exemption claimed in 100% of the homestead property under 735 ILCS 5/12-112. This issue requires the Court to determine how, exactly, an exemption by one entireties tenant of that tenant's interest is supposed to work in bankruptcy cases. Like most states that permit spouses to hold title to the marital homestead as tenants by the entirety, the tenancy under Illinois law protects the property from sale to satisfy the debt of only one spouse. 765 ILCS 1005/1c; *Premier Property Management, Inc. v. Chavez,* 191 Ill.2d 101, 728 N.E.2d 476 (2000). To enforce a joint debt, however, the property may be sold the same as if title was held in joint tenancy. The protection afforded by the entireties estate is, therefore, narrowly circumscribed and depends on whether debts are individual or joint. It follows that Illinois entireties property is exemptible under Section 522(b)(2)(B) to the extent of

---

[11] HEIGHTS BANK is also not prevented from objecting to the DEBTOR'S second amended claim of exemption. It has not done so, however, and because of the result reached in this Opinion, such an objection would now be futile.

12

individual debts, but not to the extent of joint debts. Courts applying entireties laws similar to that of Illinois have so held. *Sumy v. Schlossberg,* 777 F.2d 921 (4th Cir. 1985) (applying Maryland law, property owned by debtor and nonfiling spouse as tenants by the entirety not exempt to extent of joint debts); *Matter of Grosslight,* 757 F.2d 773 (6th Cir. 1985) (Michigan law); *Napotnik v. Equibank & Parkvale Sav. Ass'n.,* 679 F.2d 316 (3rd Cir. 1982) (Pennsylvania law); *In re Wenande,* 107 B.R. 770 (Bankr.D.Wyo. 1989) (Wyoming law); *Matter of Geoghegan,* 101 B.R. 329 (Bankr.M. D. Fla. 1989) (Florida and North Carolina law).

Application of this rule requires a comparison of the amount of equity (value above the mortgage balance) that the spouses together have in the property with the amount of joint debts. If the joint debt amount exceeds the equity, then none of the equity may be exempted under Section 522(b)(2)(B). Instead, the spouses are left with only the basic homestead exemption. If the equity exceeds the amount of joint debts, the Section 522(b)(2)(B) exemption must be allowed but only to the extent of the excess equity. The debtor's interest in the nonexempt equity is, of course, subject to administration by the trustee for the benefit of creditors. When one spouse is a non-debtor, sale of the property may be accomplished via Section 363(h). *Matter of Anderson,* 132 B.R. 657, 659 (Bankr.M.D.Fla. 1991). In this fashion, the debtor's entireties estate is not given any more or less protection under federal law than under state law. *Geoghegan,* 101 B.R. at 331. Applying the statute in this manner gives full effect to the language of Section 522(b)(2)(B).[12]

The DEBTOR, having filed individually without his wife, failed to indicate on his bankruptcy schedules whether the listed debts were individual or joint debts. At an evidentiary hearing, the DEBTOR testified that all of the listed debts, with the exception of the mortgage debt

---

[12] Although some courts take the position that the liquidated value of the nonexempt equity from entireties property should be used to pay only joint claims, *In re Ginn,* 186 B.R. 898 (Bankr.D.Md. 1995), this Court is of the view that distribution of the proceeds must be made in accordance with Section 726 to joint and individual creditors alike. *See, Wenande,* 107 B.R. at 774-75; *In re Fishman,* 241 B.R. 568, 575 n.2 (Bankr.N.D.Ill. 1999).

13

Case 04-85158    Doc 83    Filed 12/30/05    Entered 12/30/05 11:11:45    Desc Main
                 Document      Page 14 of 15

to HEIGHTS BANK, were his individual debts related to the failed business venture known as Abraham Motor Plaza. He testified that he and his wife have no long-term joint debts other than the mortgage. The only short-term joint debts that they have are for one credit card, which is paid in full monthly, and obligations related to their home such as for utilities, water, telephone, etc., all of which are paid in full monthly. None of these joint debts were scheduled and the Court is satisfied that the amount of any joint debts owing as of the petition date is small enough to be treated as negligible.

This finding makes disposition of the third prong of the four-part inquiry easy. With no joint debts, the DEBTOR is entitled to exempt his entire interest in the homestead real estate that he owns with his wife as tenants by the entirety. Since he is *entitled* to the full exemption, the DEBTOR may avoid the fixing of HEIGHTS BANK'S judicial lien, on his interest in the homestead real estate pursuant to Section 522(f)(1)(A), to the extent that the lien impairs the exemption.

**The exemption is impaired by the entire amount of the judgment lien**.

Exempt property is impaired to the extent that the sum of the lien, all other liens on the property and the amount of the exemption that the DEBTOR could claim if there were no liens on the property, exceeds the value that the DEBTOR'S interest in the property would have in the absence of any liens. 11 U.S.C. § 522 (f)(2)(A). HEIGHTS BANK'S lien is for $143,613.40. The only other lien is the mortgage lien of $52,637.94.

Each owner holding property as a tenant by the entirety in Illinois owns the whole real estate interest. *Mukhi,* 246 B.R. at 866. Therefore, the value of the DEBTOR'S interest in the property, in the absence of any liens, is equal to the fair market value of the property. Since, as shown above, the DEBTOR'S exemption rights under Section 522(b)(2)(B) are reduced only by the joint mortgage debt of $52,637.94, and given that the fair market value of the property is $115,000, the difference

of $62,362.06 is the amount of the exemption that the DEBTOR could claim if there were no liens on the property.[13] Adding this amount to the amounts of HEIGHTS BANK'S lien and the mortgage lien yields a sum of $258,613.40, which exceeds the $115,000 value of the DEBTOR'S interest in the property if lien-free by $143,613.40, the exact amount of HEIGHTS BANK'S lien. The lien is considered to impair the exemption to the extent of $143,613.40 and is, therefore, fully avoidable.

As an endnote, in order to determine whether any nonexempt equity is available for unsecured creditors, in all cases where the debtor claims an exemption in entireties property under Section 522(b)(2)(B), the value of which exceeds the basic homestead exemption otherwise allowable under 735 ILCS 5/12-901, the case trustees will have to inquire about and ascertain the total amount of joint debts owed by the cotenants as of the petition date. This inquiry must be made even if, as in this case, the debtor scheduled no joint debts. All joint debts must be counted whether scheduled or not.[14]

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[13]Section 522(f)(2)(A)(iii) requires that the Court ignore the mortgage lien but not the debt itself. Hypothesizing the mortgage as an unsecured joint debt gives effect to the statutory language.

[14]Debtors are obligated, of course, to schedule all debts that are unpaid as of the bankruptcy filing. It is not a permissible option for a debtor to elect not to schedule a debt simply because the debtor intends to pay it or because the debtor wishes not to include it in the bankruptcy case.